# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CORNELIUS O'BRIEN,

    Plaintiff,

v.                                                                       Civ. No. 99-1508 MV/WWD

WILLIAM A. HALTER,
Acting Commissioner of Social Security.[1]

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed May 19, 2000 **[docket # 8]**.[2] The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI").  Plaintiff, currently age 58, alleges a disability commencing on July 21, 1995, due to shoulder and neck injuries sustained in two automobile accidents as well as depression.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Plaintiff could not perform his past relevant work as elevator mechanic and maintenance supervisor but that he can perform a limited

---

[1] Pursuant to Fed.R.Civ.P. 25, William A. Halter, Acting Commissioner of Social Security, is substituted for Kenneth S. Apfel, Commissioner, as the Defendant in this action. Mr. Halter was nominated by President Bill Clinton on October 1, 1999, and confirmed by the United States Senate on November 10, 1999.  He was the first confirmed Deputy Commissioner of Social Security.

[2] Although the motion was first served on May 19, 2000, the motion package was filed with the Court on September 1, 2000, after an extension of the briefing schedule stipulated to by the parties.

range of medium work.  The Appeals Council denied Mr. O'Brien's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

4. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. § 404.1520(a - f).

5. Plaintiff used to work as a mechanic for Otis elevators, but was laid off in July 1995.  He said that he doesn't work now because he "can't find anybody to put up with me."  Tr. at 75.  He's been involved in three car accidents around 1993.  He complains of sharp, stabbing pains in the back and shoulders, and knee pain that varies depending on the activity.  Tr. at 65.  He told the ALJ that his upper back pain and knee pain is constant and that he constantly uses a TENS unit which affords him only partial relief.  Tr. at 66, 73.

6. Plaintiff claims he suffers from "nerves" and gets emotional and "the shakes."  Tr. at 60.  He told the ALJ that he cries at least once a week, Tr. at 63, the last time on the Thursday before the administrative hearing.  Tr. at 75.  Plaintiff takes anti-inflammatory medication and

amitriptyline for depression. He takes naps during the day, and on bad days his naps extend from a half hour to all afternoon on the couch. Tr. at 73-74. According to his wife, who testified at the hearing, if Plaintiff doesn't nap during the day, "his nerves fall apart." Tr. at 80.

   7. Plaintiff sometimes mows the lawn, and does gardening and yard work, but no longer pursues any hobbies. Tr. at 70. From September 1996 through mid-April 1997, he and his wife traveled around the country in a motor home which they bought in an effort to "get rid of the stress"of maintaining a house. Plaintiff's wife participates in trade shows around the country. See Tr. at 71, 74, 80. He also stopped seeing doctors since 1996 because seeing doctors was "strictly down to a maintenance type thing." Tr. at 74. Plaintiff's wife testified that her husband's condition has deteriorated since July 1995. Tr. at 76.

   8. Plaintiff testified that he can stand or walk not more than 10 or 15 minutes before needs to stop for a break. Tr. at 67. He can sit for 45 minutes to an hour before he needs to change positions. Tr. at 68. Plaintiff stated that he tries not to lift more than 25 pounds, and he needs a handrail to assist him in climbing stairs. Tr. at 69.

   9. Plaintiff alleges the following errors: (1) that the ALJ gave no weight to four of Plaintiff's treating doctors who opined that he was disabled, which was contrary to law; (2) the ALJ's finding that Mr. O'Brien's mental impairment is not a severe impairment is not supported by substantial evidence and is contrary to law; (3) the ALJ's residual functional capacity determination is not supported by substantial evidence and is contrary to law; (4) the ALJ's credibility determination is not supported by substantial evidence and is contrary to law; and (5) the ALJ relied on a vocational expert's opinion that Plaintiff can perform light occupations to find him not disabled, where instead the grids require a finding of disabled under those circumstances.

   10. Defendant asks that the case be remanded under Sentence Four of 42 U.S.C. §

405(g) in order to further develop the case, including additional and more specific vocational testimony and medical information regarding Plaintiff's residual functional capacity. Apparently Plaintiff initially requested reversal *or* remand with a rehearing, but Plaintiff has since objected to Defendant's request for remand, contending that only reversal with an award of benefits is appropriate.

11.  Plaintiff argues that remand for further development of the case is not necessary, since the ALJ proceeded through all five of the sequential evaluation steps. Plaintiff requests that instead the Court should reverse the ALJ's decision and award an immediate payment of benefits.

12.  After reviewing the record and the basis for Defendant's request for a remand and rehearing, I find that remanding the case for further inquiry is warranted.

13.  Although Plaintiff is correct that the Court does have the discretion to direct a reversal with an award of benefits rather than remand for a rehearing, see Nielson v. Sullivan, 992 F.2d 1118, 1122 (10th Cir. 1993) (citations omitted), that is not warranted here. The cases upon which Plaintiff relies to urge the court to direct an award of benefits, Mem. at 2, are distinguishable from the present case, since in those cases, "additional fact- finding would have served no useful purpose." Talbot v. Heckler, 814 F.2d 1456, 1460 (10th Cir.1987). In this case, there remain factual issues which when resolved would not necessarily require a finding of disability.

**Four Treating Physicians and Mental Impairment**

14.  Plaintiff points to letters written by four treating physicians allegedly attesting to Plaintiff's inability to work. Each of these physicians had seen Plaintiff previously, in October 1995, but these "disability" letters were generated only a week prior to the administrative hearing.

15.  The ALJ discounted the opinions of four treating physicians for different reasons. In

October, Dr. Porter, a specialist in physical medicine, diagnosed Plaintiff with cervical spondylosis with cervical myofascial pain syndrome. Tr. at 163. The ALJ correctly noted that Dr. Porter did not declare Plaintiff to be "permanently and totally" disabled. Tr. at 31. Rather, the doctor placed certain limitations on Plaintiff, viz., no heavy lifting or lifting from certain angles, no pushing and pulling, no overhead reaching. Tr. at 166. Even Dr. Porter's letter of "disability" did not totally preclude work, but rather restricted Plaintiff's capacity for certain work activities. Tr. at 213.

16. Dr. Bhat, a family practitioner, completed a residual functional capacity assessment in October 1995. The ALJ was not incorrect in his assessment that Dr. Bhat's letter of April 24, 1997, Tr. at 218, was inconsistent with the residual functional capacity assessment that she completed a couple of years earlier, where Plaintiff exhibited no impairments for sitting, standing, walking and bending. Tr. at 198. Nor did the 1997 letter indicate changes in his status which could form the basis for her opinion that he could not work.

17. Plaintiff was seen by Dr. Ferri, a psychologist, and Dr. Patel, a psychiatrist, for periods of time under twelve months. Dr. Ferri attributed Plaintiff's depression to various causes: loss of his job and income and "ongoing legal issues surrounding his motor vehicle accidents." Tr. at 214. He also noted that during the time he treated Mr. O'Brien, his depression showed "general improvement." Id. In October, 1995, Dr. Patel opined that Plaintiff had a dysthmic disorder, Tr. at 161, and opined in a letter dated April 10, 1997 that chronic pain, depression and anxiety prevented Plaintiff from working. However, as Defendant notes, there are no specific findings which relate these impairments to an assessment of Plaintiff's residual functional capacity for *any* type of work.

18. I find that the ALJ did not err legally, nor did he ignore substantial evidence in the

record, by the conclusion that these April 1997 letters did not constitute substantial evidence that Plaintiff was disabled, given the former treatment notes and opinion of these physicians. Moreover, the letters declaring Plaintiff's disability do not conclusively establish disability, since the Commissioner, not a physician, is responsible for examining medical source opinions and making the determination on whether claimant meets statutory definition of disability. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Sec'y of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994); see also Kouril v. Bowen, 912 F.2d 971 (8th Cir. 1990) (acknowledging that although treating physician may be correct that it was "practically impossible" for claimant to function in the working world (and thus that he is statutorily disabled), he could be mistaken, and that by regulation the [Commissioner] is guaranteed the opportunity to demonstrate that this possibility is a reality).

19. The opinions of these four physicians do not address how Plaintiff's mental impairment affects his ability to work. While the ALJ did not err by not accepting these opinions as conclusive evidence of disability, I find that the ALJ erred in determining that Plaintiff's mental impairment was not severe under step two. Tr. at 27.

20. Step two requires only a "de minimis" showing by the claimant that he has an "impairment or combination of impairments which significantly limits" his ability to do basic work activities. 20 C.F.R. § 404.1520(c); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.1997) (citation omitted). I find that Plaintiff's mental impairment meets a step two threshold and could significantly limit his ability to work, based on the reports of Plaintiff's treating physicians.

21. Defendant concedes that Plaintiff's mental impairment is a "severe" nonexertional impairment, see Resp. at 4, that warrants further inquiry and presentation on remand to a vocational expert ("VE") for an opinion of whether Plaintiff can still perform work in light of this

impairment. Remand is proper in order to conduct this inquiry.

**Residual Functional Capacity**

22. Defendant also requests remand for the purpose of conducting another residual functional capacity, and also to present the functional restrictions imposed by Dr. Porter (e.g., frequent changes in posture) to a vocational expert to determine whether these limitations further restrict Plaintiff's work capabilities.[3]

23. In this case, it appears that Plaintiff may be able to do more than light work, but less than a full range of medium work, due mainly to lifting restrictions.[4] I find remand to be an appropriate means of determining whether Plaintiff can perform any kind of work, given Plaintiff's mental impairment and unexplored functional limitations which at this point leave him at an in-between work level. Pronouncing Plaintiff disabled under the grids (20 C.F.R. Pt. 404, Subpt.P, App.2, Table No. 2, Rules 202.04, 202.06) because he cannot perform a full range of medium work, as Plaintiff urges, cuts short an accurate assessment of Plaintiff's work abilities which is at the center of the Commissioner's step five inquiry.[5]

**Decision Conflicts with the Grids**

---

[3] Alternate sit/stand options were discussed only for light and sedentary work. Tr. at 84-85.

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. § 404.1567(b), 416.967(a) (1986). Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. Plaintiff stated he tries not to lift more than 25 pounds.

[5] Although not discussed in the briefs, I note that the VE stated that Plaintiff has "many transferable work skills," Tr. at 81, which does not necessarily require a finding of disability under the grids for light work, see Rule 202.07.

24. The grids consider only impairments that result in exertional or strength limitations and may not be fully applicable where other, nonexertional impairments are present. Channel v. Heckler, 747 F.2d 577, 580 (10th Cir. 1984); 20 C.F.R. Pt.404, Subpt.P, App. 2, § 200(e)(1),(2). In light of the above finding that Plaintiff's mental impairment is a "severe" nonexertional impairment which deserves further inquiry and presentation for vocational expert testimony, use of the grids would be precluded on remand.

**Pain and Credibility**

25. Plaintiff alleges that the ALJ's finding of noncredibility should be reversed because it is not based on substantial evidence and is contrary to law. The ALJ determined that while Plaintiff experienced pain causing functional limitations, his complaints were disproportionate with the objective medical evidence in the record. Tr. at 32. Disability requires more than mere inability to work without pain. To be disabling, pain must be "so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988).

26. An ALJ may consider the claimant's activities in discounting subjective complaints, but evidence of minimal activities does not establish that a claimant can engage in light or sedentary work activity. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988). In this case, the ALJ noted that Plaintiff and his wife live in a mobile home, that he "drives almost every day," that he washes the dishes, does the laundry, shops, goes to church weekly, visits with others, goes to the movies, watches television, does exercises for his neck and shoulders, and occasionally mows the lawn. Tr. at 32.

27. Although the Court ordinarily defers to the ALJ as trier of fact on credibility, Thompson v. Sullivan, 987 F.2d at 1489, findings as to credibility should be "closely and

affirmatively linked to substantial evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

28. I find that some of the evidence which formed the basis for the ALJ's noncredibility determination was selective and somewhat mischaracterized. For instance, the Plaintiff's movie attendance amounted to just *twice* in the past year. Tr. at 70. Plaintiff also stated that he did *not* do the dishes, sweep or mop, vacuum and only recently started helping with the laundry. Tr. at 69-70 see, e.g., Sisco v. U.S. Dept. of Health & Hum. Serv., 10 F.3d 739, 743 (10th Cir.1993) (misconception of evidence by ALJ where ALJ selectively acknowledged parts of Plaintiff's testimony while leaving important segments out, e.g., where Plaintiff testified to being able to do these activities very infrequently and only if she's feeling well).

29. The ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. Thompson v. Sullivan, 987 F.2d at 1489. Nor does the sporadic performance of household tasks or work establish that a person is capable of engaging in substantial gainful activity. Id. (quotation omitted).

30. Mr. O'Brien testified that he only *sometimes* goes shopping, and does *not* do the dishes if he "can help it." Tr. at 69 -70. While Plaintiff and his wife drove about 300 miles per day in their mobile home, they would take breaks after every hour and a half. Tr. at 71-72. Watching TV, weekly church attendance lasting for an hour and "some neck and shoulder" exercises done at home are hardly activities which demonstrate that Plaintiff is capable of performing work on a reasonably regular basis. See Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (in order to engage in gainful activity, a person must be capable of performing on a reasonably regular basis). Also, because I do not find Plaintiff's statement that he has two or three beers a week to be inconsistent with his denial of a drinking problem, Tr. at 71, I do not consider the ALJ's reliance on Plaintiff's drinking "problem" to be any kind of evidence of

noncredibility.[6]

31.  As Plaintiff points out, none of the physicians Plaintiff saw expressed any doubt as to the sincerity of his complaints about pain.  The medical reports and treatment notes indicate that Plaintiff's symptoms generally intensified depending on the type and level of activity in which he was involved, Tr. at 166, 177, but the pain was considered to be chronic.  Tr. at 161.  While these symptoms may not be disabling under social security regulations, I find that they should be have been considered as a nonexertional impairment and factored into an assessment of Plaintiff's ability to work.

32.  Accordingly, I find that the ALJ's credibility determination was not based on substantial evidence.

33.  In sum, I find that the ALJ did not err by not giving any weight to four of Plaintiff's treating doctors who opined in letters that Plaintiff was disabled and precluded from work.  I further find that the ALJ erred with regard to findings that Mr. O'Brien's mental impairment was not severe under step two, and that the ALJ's credibility determination was not supported by substantial evidence. The case should be remanded to the Commissioner for further inquiry and development on Plaintiff's mental impairment and residual functional capacity, and for consideration of Plaintiff's complaints of pain as a nonexertional impairment.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 8]** be DENIED IN PART AND GRANTED IN PART in that this case should be remanded to the Commissioner for further administrative proceedings centered around further inquiry into

---

[6] The ALJ stated in his decision: "[Plaintiff] said he drinks about two or three beers a week, but that he does not have a problem with drinking." Tr. at 32.

Plaintiff's mental impairment and residual functional capacity. Remand shall include consideration of Plaintiff's complaints of pain as a nonexertional impairment, and additional vocational expert testimony based on Plaintiff's exertional and nonexertional limitations in order to determine what range of work, if any, is available to Plaintiff. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE